Janell I. OLSON, Respondent,

Commissioner, Minnesota Department of Economic Security, Respondent,

v.

SPECIAL SCHOOL DISTRICT NO. 1, Relator.

No. 51221.

Supreme Court of Minnesota.

Aug. 21, 1981.

John J. O'Donnell, Minneapolis, for relator.

Peterson, Engberg & Peterson and Bruce P. Grostephan, Minneapolis, for Olson.

Warren Spannaus, Atty. Gen. and Joan Volz, Asst. Atty. Gen., St. Paul, for Commr. of Minn. Dept. of Economic Sec.

OTIS, Justice.

We granted relator's petition for a writ of certiorari to review a decision of the Commissioner of the Department of Economic Security determining that the respondent, a tenured teacher, is entitled to unemployment compensation benefits from June 8, 1979 to August 24, 1979. The question presented concerns the interpretation of Minn.Stat. § 268.08, subd. (6)(a) (1980) which precludes a teacher from obtaining unemployment compensation benefits during the summer recess if the teacher has a contract or reasonable assurance of employment for the coming school year. We affirm the commissioner's decision granting unemployment benefits.

The facts are not disputed. In a letter dated May 16, 1979, the school district informed Olson, a tenured teacher, that she was "one of the teachers who is likely to be recommended for discharge as a result of the discontinuance of 206.9 certificated positions in the Minneapolis Public Schools" but that "[a]dditional resignations or new Federal programs may allow the school system to recommend fewer teachers for discharge than is currently anticipated." The school district concluded its letter to Olson by expressing its gratitude for her past services.[1] Since the school district does not

---

1. Included in the May 16th letter was a form allowing the teacher to waive his or her right to a hearing prior to discharge. The waiver provided that it was effective only if the teacher was "formally recommended for discharge because of discontinuance of positions due to

enter into contracts with its tenured teachers, Olson did not have a contract of employment for the 1979–1980 school year.

During the summer, Olson repeatedly contacted the school district to ascertain whether a teaching position would be available. In late August, Olson was assigned to teach at Edison High School.

■ A teacher is not eligible to receive unemployment compensation benefits if the teacher "performs the services in the first of the academic years or terms *and if there is a contract or a reasonable assurance that the individual will perform services in any such capacity * * * in the second of the academic years or terms * * *.*" Minn. Stat. § 268.08, subd. 6(a) (1980) (emphasis added). On appeal the school district contends that Olson's statutory tenure rights to "continue in service and hold [her] respective position", Minn.Stat. § 125.17, subd. 3 (1980), are both a contract and reasonable assurance of employment and, therefore, Olson was not eligible to receive unemployment compensation benefits during the summer of 1979.

■ In *Minneapolis Federation of Men Teachers v. Board of Education*, 238 Minn. 154, 56 N.W.2d 203 (1952), this court defined tenure as "a vested right to continued employment, [which] does not purport to compel [teachers] to continue to teach year after year if they do not so desire. In short, the vested right conferred is in the nature of a personal privilege to do or not to do." *Id.* at 160, N.W.2d at 207. Since tenure does not obligate the teacher to continue in employment, it cannot be considered a contract. *Stensgaard v. Smith*, 43 Minn. 11, 44 N.W. 669 (1890). Having concluded that Olson did not have a contract to teach for the 1979–1980 school year, we must next determine whether she had reasonable assurance that her employment would be continued.

We agree that the right to continued employment guaranteed by tenure gives the tenured teacher reasonable assurance of employment. This assurance, however, was

financial limitations and lack of pupils." Olson signed and returned the waiver in late May.

defeated by the school district's letter of May 16th stating that it was likely Olson would be discharged due to lack of funds and students.

Since Olson did not have a contract or reasonable assurance of continued employment, the granting of unemployment benefits to Olson for the period from June 8, 1979 to August 24, 1979 was proper. We do note, however, that the statute in combination with the facts of this case produce a disturbing result.

Section 268.03 of the Employment Service Law states the purpose of the act is to combat "[e]conomic insecurity due to unemployment * * * *" by providing unemployment benefits to "persons unemployed through no fault of their own." Minn.Stat. § 268.03 (1980). Thus, the statute contemplates that there will be a severance of an employment relationship and loss of wages prior to a person being eligible for unemployment compensation benefits. In this case, there is recovery of unemployment compensation benefits, yet there was never a severance of the employment relationship or loss of wages. Thus, the school district is penalized by having to pay both wages and unemployment benefits for having been forthright and disclosing that Olson's position was in jeopardy. To avoid this dilemma, the school district no longer informs its teachers of the likelihood that it may eliminate the position due to declining enrollment or lack of funds prior to instituting termination proceedings. While the school district's actions will avoid the problems presented in this case, it is not clear that this result is satisfactory.

The statutory provisions governing termination of tenured teachers of cities of the first class do not require the school district to terminate its teachers within a particular time frame. Minn.Stat. § 125.17 (1980); *contra* Minn.Stat. § 125.12, subds. 4, 6(b) (1980) (when terminating tenured teachers due to lack of students and finances school districts not in cities of the first class must

Olson, however, was never recommended for discharge.

terminate prior to June 1. Therefore, when faced with eliminating positions due to declining enrollment and financial limitations, a school district in a city of the first class can wait until shortly before the school year begins to terminate positions. Thus, unlike the counterpart tenured teacher not in a first class city school district, it may be late August before a first class city tenured teacher is terminated and therefore able to collect unemployment benefits and look for another position.

Affirmed.