# MINNEAPOLIS FEDERATION OF MEN TEACHERS, LOCAL 238, AFL, AND OTHERS v. BOARD OF EDUCATION OF THE CITY OF MINNEAPOLIS AND ANOTHER.[1]

December 12, 1952.

No. 35,829.

[1]Reported in 56 N. W. (2d) 203.

John A. *Goldie* and Samuel I. *Sigal*, for appellants.

John F. *Bonner*, City Attorney, and D. J. *Shama*, Assistant City Attorney, for respondents.

MATSON, JUSTICE.

Plaintiffs appeal from a judgment in an action brought under the uniform declaratory judgments act to determine whether the Minneapolis board of education and its superintendent of schools may annually compel *tenure* teachers to sign a contract of employment.

The board of education of Minneapolis, a city of the first class, on June 26, 1951, adopted a resolution establishing the school year as the contractual employment period for all certified personnel and requiring such personnel, *including all teachers who have acquired a tenure status under the teachers tenure act* (M. S. A. 130.22 to 130.32), to sign a written contract for the ensuing year. Pursuant to this resolution, the board of education prepared for the signature of all tenure teachers the following written instrument:

"Minneapolis, Minnesota

———————, 1951

"To————————

————————————

"You have been appointed ——————— for the 1951-1952 school year consisting of ————— weeks (months), according to the school calendar which appears on the back hereof as adopted on February 27, 1951, at a salary of $————.

"This appointment is subject to your acceptance and subject to the laws of the State of Minnesota, the Charter of the City of Minneapolis, and the Rules and Regulations of the Board of Education.

"The Board of Education of

The City of Minneapolis

By————————

"Acceptance

"I accept the above appointment and agree to discharge my duties as such _____ to the best of my ability, and to abide by the laws of the State of Minnesota, the Charter of the City of Minneapolis, and the Rules and Regulations of the Board of Education of the City of Minneapolis.

"Dated _____, 1951.

_____

Teacher

"The acceptance must be received by the Board of Education of the City of Minneapolis on or before _____."

The individual plaintiffs, George Beacom, Jean Robertson, and Peter P. Mankowski, are teachers with tenure rights under the teachers tenure act who bring this action in behalf of themselves and all similarly situated teachers. The other two plaintiffs are unincorporated labor organizations which include in their membership a number of teachers who either are on probation or have acquired a tenure status in the Minneapolis public school system.

Plaintiffs have brought this declaratory judgment action to determine whether tenure teachers can be compelled to sign any contract as a prerequisite for their continued employment. Pursuant to a prayer for injunctive relief to preserve the *status quo* between the parties, the trial court issued an order restraining defendants *pendente lite* from submitting any contract to tenure teachers for signature. Upon final hearing the court found that the alleged contract was in no manner designed to disturb or change established salary schedules, to demote any teacher, or in any manner to impair any teacher's tenure status. The court further found the contract to be fair, binding, and reasonable and that defendants were entitled to a judgment of dismissal because the individual plaintiffs had established no right to relief and because the other two plaintiffs, the labor organizations, were not proper parties. From the judgment entered we have this appeal.

■ Defendants assert that no justiciable controversy is involved and that therefore the court is without jurisdiction to render a

declaratory judgment. In support of their contention defendants advance the erroneous theory that in order to have a justiciable controversy the complaint must necessarily state a *legal cause of action* in the same sense as that term is ordinarily used in actions falling outside the uniform declaratory judgments act. (See, § 555.01.) Clearly, in order to constitute a justiciable controversy, there need not be such an actual right of action in one party against the other as would justify a granting of consequential relief but only a right on the part of the complainant to be relieved of an uncertainty and insecurity arising out of an actual controversy with respect to his rights, status, and other legal relations with an adversary party. Jurisdiction exists to declare the rights, status, and other legal relations of the parties if the complainant is possessed of a judicially protectible right or status which is placed in jeopardy by the ripe or ripening seeds of an actual controversy with an adversary party, and such jurisdiction exists although the *status quo* between the parties has not yet been destroyed or impaired and even though no relief is or can be claimed or afforded beyond that of merely declaring the complainant's rights so as to relieve him from a present uncertainty and insecurity.[2]

In the light of these principles there can be little doubt that a justiciable controversy is here presented. Whether the instrument proposed for the signature of tenure teachers be called a contract or something else, complainant teachers have been and now are faced with a present uncertainty and insecurity with respect to their tenure status, and such uncertainty and insecurity will continue until the legal consequences attendant upon their signing, or upon their refusal to sign, the instrument have been judicially declared. Their insecurity is not based upon a hypothetical case which has no existence other than in the realm of future possibility

[2]See, §§ 555.01 and 555.12; Harrington v. Fairchild, 235 Minn. 437, 51 N. W. (2d) 71; State ex rel. Smith v. Haveland, 223 Minn. 89, 25 N. W. (2d) 474, 174 A. L. R. 544; 16 Am. Jur., Declaratory Judgments, § 10; Borchard, Declaratory Judgments (2 ed.) 27; 1 Anderson, Actions for Declaratory Judgments (2 ed.) § 9.

as in the case of Lee v. Delmont, 228 Minn. 101, 36 N. W. (2d) 530, but has an actual and present existence similar to that of the plaintiff in Harrington v. Fairchild, *supra*. Defendants take the position, however, that we have only a hypothetical state of facts because the board of education has not actually submitted the written instrument to tenure teachers for their signature, because the tenure teachers have not actually refused to sign, and, further, because there is no showing that their refusal to sign the instrument will adversely affect their tenure rights by way of either discharge or demotion. In the first place, defendants apparently overlook that, pursuant to the resolution adopted by the board, the so-called contract would undoubtedly have been submitted to the teachers if the restraining order had not been issued. Secondly, defendants mistakenly assume that a destruction of the *status quo* between the parties is a prerequisite to the establishment of a justiciable controversy. A justiciable controversy may clearly exist without first having an actual disruption of the existing legal relationships between the parties, and such a controversy does not lose its justiciable character because the court in the exercise of a sound discretion issues a restraining order to preserve the *status quo* until the rights of the parties have been declared. It is no defense that the court by appropriate action has prevented the ripening seeds of a controversy from becoming ripe.

We come to the fundamental issue of whether the board can compel a tenure teacher to sign the so-called contract. First we turn to the instrument itself to see what it contains. The first portion is simply a notice by the board to the individual teacher that she, subject to her acceptance, has been reappointed for the ensuing year with a salary in accord with the established schedule. The *acceptance*, or operative part, to be signed by the teacher does nothing more than signify her acceptance of the appointment and her intention to discharge her teaching duties for another year. It is true that the acceptance also requires a teacher to agree—

"to abide by the laws of the State of Minnesota, the Charter of the City of Minneapolis, and the Rules and Regulations of the Board of Education of the City of Minneapolis."

The above quoted part of the acceptance is meaningless window dressing and adds nothing by way of contractual obligation because, irrespective of any contract, all teachers, inclusive of those with a tenure status, are subject to the reasonable rules and regulations enacted by the board of education for the government and administration of the schools.[3] Obviously no appointments can be made or accepted other than subject to the board's reasonable rules and regulations. The requirement that the rules must be reasonable cannot be changed or affected by contract. Furthermore, like any other Minneapolis citizen, teachers are subject to the applicable provisions of the city charter and to the laws of Minnesota. The written instrument, thus denuded of its superfluous and meaningless language, clearly amounts to nothing more than a written signification of the individual teacher's intent to continue with her teaching assignment for another year. Although the notice of appointment specifies a certain salary this is of no significance since no issue has been raised with respect to salaries and since the trial court has found that no change in salaries was intended or effected. No breach of any contractual provision is alleged. It becomes unnecessary therefore to determine the validity of the contract—if it be one—and the nature, existence, or extent of the board's contractual power. Fundamentally the only question presented is whether the board in the exercise of its power to make reasonable rules and regulations for the administration of the schools may require a tenure teacher to signify a reasonable time in advance whether she will be on hand to teach the following school year. The question must be answered in the affirmative. This becomes at once apparent when we consider the nature of a tenure teacher's status. Sub-

---

[3]State ex rel. Ging v. Board of Education, 213 Minn. 550, 581, 7 N. W. (2d) 544, 560. See, M. S. A. 125.06, subd. 9, and Minneapolis City Charter and Ordinances (Perm. ed.) c. 18, § 1; State ex rel. Cody v. Caldwell Parish School Board, 215 La. 645, 41 So. (2d) 461; 10 La. L. Rev. 120, 128.

ject to legislative control and to reasonable rules and regulations adopted by the board of education, a teacher who has completed a probationary period of three consecutive years in a public school of a city of the first class is vested by the teachers tenure act (§ 130.22 to 130.32) with a right to continued employment.[4] A teacher cannot be deprived of this vested right except for cause and then only in the manner prescribed by statute. (§§ 130.24, 130.25, and 130.26.) Although the statute gives tenure teachers a vested right to continued employment, it does not purport to compel them to continue to teach year after year if they do not so desire. In short, the vested right conferred is in the nature of a personal privilege to do or not to do. A tenure teacher may elect to take a new position with another school system, or, for any reason that seems valid to her, she may elect not to return to her teaching position the following year. It follows that, unless teachers are required to give some definite indication a reasonable time in advance whether they will continue to serve in the school system, the board of education will be wholly without means of knowing whether a complete staff of competent teachers will be on hand for the next year and will be unable to secure qualified teachers to fill vacancies. A regulation, such as the one in the instant case, which requires all tenure teachers to signify in advance and in writing whether they will continue with their work is a reasonable one which promotes the welfare of the schools by making it possible to maintain a competent teaching staff without in any way impairing the tenure status of any teacher.

In view of our disposition of the case on its merits as to the individual teachers, the question as to whether the other plaintiffs are proper parties becomes wholly academic and need not be determined.

Subject to this opinion the judgment is affirmed.

Affirmed.

---

[4]See, Abraham v. Sims, 2 Cal. (2d) 698, 42 P. (2d) 1029.