Robert McCAUGHTRY,
et al., Appellants,

·v.

CITY OF RED WING, Respondent.

No. A10–0332.

Supreme Court of Minnesota.

Dec. 28, 2011.

Lee U. McGrath, Institute for Justice, Minnesota Chapter, Minneapolis, MN; and

Dana Berliner, Institute for Justice, Arlington, VA, for appellants.

John M. Baker, Kathryn M.N. Hibbard, Greene Espel PLLP, Minneapolis, MN, for respondent.

Teresa Nelson, Jessica Arck, St. Paul, MN, for amicus curiae American Civil Liberties Union of Minnesota.

David F. Herr, Haley N. Schaffer, Maslon Edelman Borman & Brand, LLP, Minneapolis, MN, for amici curiae Dean Eric Janus and Professors Roger S. Haydock and Gregory Sisk.

Charles R. Shreffler, Shreffler Law, PLLC, Hopkins, MN, for amicus curiae Minnesota Family Institute.

Jarod M. Bona, DLA Piper LLP, Minneapolis, MN, for amicus curiae St. Paul Association of Responsible Landlords.

Erick G. Kaardal, Mohrman & Kaardal, P.A., Minneapolis, MN, for amici curiae legal scholars Ryan Scott and Samuel Bray.

## OPINION

MEYER, Justice.

The issue in this case is whether landlords and tenants whose properties have been subject to repeated applications for administrative warrants may bring a declaratory judgment action challenging the constitutionality of a rental property inspection ordinance. The ordinance, enacted by respondent City of Red Wing, requires inspections of rental property before landlords may obtain operating licenses. The City may conduct inspections with the consent of the landlord or tenant or, in the absence of consent, by application for and judicial approval of an administrative warrant. Appellants are nine landlords and two tenants who have refused to consent to inspections of their properties and have successfully challenged three separate applications for administrative warrants. This appeal concerns the justiciability of appellants' declaratory judgment action seeking to have the rental inspection ordinance declared unconstitutional. The court of appeals affirmed the district court's dismissal of the declaratory judgment action for lack of standing, concluding that appellants had not alleged an injury that was actual or imminent. *McCaughtry v. City of Red Wing*, No. A10-332, 2010 WL 3744638, at *2-4 (Minn.App. Sept. 28, 2010). We reverse, concluding that the challenge to the constitutionality of the rental inspection ordinance presents a justiciable controversy.

In 1997 the City of Red Wing commissioned a study of housing needs and conditions in the City. City of Red Wing, *Red Wing Housing Study* 2 (2003). The study found significant problems in the City's rental housing stock, "including health and safety issues, age of the housing stock, older converted buildings, lack of maintenance of rental properties, ... absentee landlords, [and] violations of codes." *Id.* at 77-78. The study, noting "the success other cities have had in implementing rental inspection programs," recommended that the City implement its own rental inspection program. *Id.* at 78. The study was updated in 2003. *Id.* at 2. The update repeated the original study's recommendation that the City adopt a rental inspection program "to assure that all rental units in Red Wing comply with housing laws and codes," thus "removing blighted and unsafe conditions." *Id.*

The City adopted the recommendation and enacted a rental inspection and licensing ordinance in February 2005 as part of its Housing Maintenance Code (HMC) and Rental Dwelling Licensing Code (RDLC). *See* Red Wing, Minn., City Code §§ 4.03-.04 (2011). The RDLC requires inspec-

tions of residential rental dwellings every seven years. *Id.* § 4.04, subd. 1(A)(2), (C). Property must be inspected before the City will issue or renew a seven-year operating license, although landlords may obtain temporary two-year permits allowing them to rent property for which an operating license has not yet been issued. *Id.* § 404, subd. 1(A)(1).

Under the ordinance, the City may inspect rental properties either by consent or by judicial issuance of a warrant. *Id.* § 4.04, subd. 1(C)(8)–(9). The ordinance calls for the City to seek consent from landlords and tenants to perform an inspection. *Id.* § 4.04, subd. 1(C)(8). If consent is withheld, the City must "seek permission, from a judicial officer through an administrative warrant, for its enforcement officer or his or her agents to conduct an inspection." *Id.* § 4.04, subd. 1(C)(9). The ordinance does not describe the procedures for seeking a warrant or the conditions under which a warrant should be granted; the ordinance simply provides that "[n]othing in this Code shall limit or constrain the authority of the judicial officer to condition or limit the scope of the administrative warrant." *Id.* In addition, the ordinance does not require that the City provide notice to a landlord or tenant that the City is seeking an administrative warrant. *See id.*

In 2006 the City sought its first administrative warrant in Goodhue County District Court in connection with appellants' rental properties. Appellants challenged the warrant application on several grounds, including claims of unconstitutionality. The district court denied the application on nonconstitutional grounds, finding that the rental inspection ordinance authorized an inspection only when (1) a rental license application had been executed, and (2) there was reason to believe a code violation exists. The City

subsequently amended the ordinance, adding language that limited the scope of inspections to that necessary to determine whether the rental properties conformed to the HMC. *See* Red Wing, Minn., City Code § 4.04, subd. 1(C)(10).

At the same time appellants were opposing the City's application for an administrative warrant, they filed a separate declaratory judgment action in Goodhue County District Court, challenging the City's rental inspection ordinance on Fourth Amendment grounds. Appellants sought declaratory and injunctive relief. The City removed this action to federal district court. The federal court granted the City's motion for summary judgment. *Stewart v. City of Red Wing*, 554 F.Supp.2d 924, 931 (D.Minn.2008). The court determined that appellants had not suffered an actual injury in fact or "demonstrated that injury to their Fourth Amendment rights is imminent." *Id.* at 929. The court reasoned:

> Plaintiffs' properties have not in fact been searched or inspected by the City, and no search warrants have been issued by a reviewing state court judge. To the extent plaintiffs contend that the RDLC coerces their consent to an illegal search, none of the plaintiffs in this case has yet consented to a search of his or her rental property. Rather, plaintiffs have insisted on exercising their Fourth Amendment rights, demanding that the City seek an administrative warrant from a reviewing state court judge. Indeed, plaintiffs successfully challenged the City's first warrant application, effectively insulating their constitutional rights from injury through state court litigation. Further, plaintiffs continue to rent property through the use of temporary rental permits. . . .

*Id.* The court also stated that "[n]othing in the record suggests to this Court that a

reviewing state court could not adequately review and limit the city's warrant application to ensure the warrant complies with the Fourth Amendment." *Id.* at 930. Therefore, the court concluded the alleged constitutional injury is "too speculative" to afford relief under Article III. *Id.* at 931. The court did not address the substance of appellants' constitutional challenge, but did observe that the issues "present difficult questions of Fourth Amendment doctrine." *Id.* The court ultimately remanded the matter to state court.

On remand, the Goodhue County District Court consolidated three different matters: (1) the remanded action from federal court; (2) a new declaratory judgment action brought by appellants challenging the constitutionality of the rental inspection ordinance; and (3) the City's second application for an administrative warrant, which had been stayed pending the federal court's decision. The state court denied the City's second application for an administrative warrant on the basis that the City had not put limits on the hypothetical future use of information that might be gained through the inspection program.

Following this ruling, the Red Wing City Council amended the rental inspection ordinance a second time. Under the amended version of the ordinance, an administrative warrant is required before the City may inspect a nonconsenting tenant's unit or the common areas of a nonconsenting landlord's property. Red Wing, Minn., City Code § 4.04, subd. 1(C)(8)–(9). The City also amended the ordinance to address the state court's privacy concerns. *See id.* § 4.04, subd. 1(C)(16)–(17).

In 2009 the City submitted a third application for an administrative warrant to inspect appellants' rental properties. In the state court proceeding that is the subject of this appeal, appellants made a number of arguments challenging the constitutionality of the ordinance. Appellants argued that the administrative warrant mechanism violates Article I, Section 10, of the Minnesota Constitution, which appellants contend requires individualized probable cause to search an occupied building. Appellants also argued that the City's third application for an administrative warrant failed to satisfy minimal federal constitutional standards for housing inspections.[1] The City defended the application for an administrative warrant and challenged appellants' standing to assert the constitutional claims in the declaratory judgment action. The district court denied the City's third application for an administrative warrant.[2] But the court granted the City's motion for summary judgment on appellants' declaratory judgment claims and dismissed the declaratory judgment claims without prejudice.

---

1. In addition, appellants argued that the rental inspection ordinance violates their right to procedural due process by failing to specify how citizens may challenge an administrative warrant application. Appellants abandoned this claim on appeal after the district court concluded that any future warrant applications would have to be conducted under the procedures used in the third warrant application, which involved the same notice, briefing, and hearing opportunities allowed for dispositive motions under the Minnesota General Rules of Practice for the District Courts. *See* Minn. Gen. R. Prac. 115.03.

2. In denying the third application for an administrative warrant, the district court concluded that the warrant application was "not reasonable" because "the invasion the search entails outweighs the public interest at stake." In reaching this conclusion, the court cited privacy concerns related to the dissemination of data collected during the inspections. The court also indicated that "the scope of the RDLC is overly broad in that it grants inspectors too much discretion in deciding whether or not to search cabinets and closets." The denial of the warrant application is not at issue in this appeal.

As relevant to the justiciability issues raised in the declaratory judgment action, the district court concluded that appellants lack standing to challenge the constitutionality of the rental inspection ordinance. The court found that appellants "have not suffered an injury that is actual or imminent." Although the court shared appellants' concerns about continuing "to expend significant time and resources fighting warrant applications," the court stated that it could not conclude that "the mere presence" of an application for an administrative warrant creates an imminent injury. In addition, the court noted that under the plain language of the ordinance, the reviewing judge is expressly authorized to condition or limit the scope of the warrant as appropriate. The court rejected appellants' argument that "the 'seeds' of this controversy are so ripe that they are practically falling off the vine." Accordingly, the court dismissed the declaratory judgment claims without prejudice.

Although the district court concluded that appellants lack standing, in the interests of "judicial economy," the court considered appellants' argument that the Minnesota Constitution prohibits the use of administrative warrants to search rental property in the absence of individualized probable cause. The district court noted that the United States Supreme Court has applied a reasonableness standard in connection with administrative warrants. *See Camara v. Mun. Court of S.F.,* 387 U.S. 523, 538, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (holding that " 'probable cause' to issue a warrant to inspect [private property] must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling"). But the district court also noted that Minnesota appellate courts have not previously applied the Minnesota Constitution in this context. The district court ultimately held that it lacks the authority to conclude that Art. 1, Sec. 10 of the Minnesota Constitution provides greater protection than the Fourth Amendment of the U.S. Constitution by forbidding the use of administrative warrants to enter dwellings without consent or that individualized probable cause is necessary to search occupied buildings pursuant to an administrative warrant.

On appeal, appellants challenged the district court's ruling on standing and asked the court of appeals to conclude that the City must obtain an administrative search warrant supported by individualized probable cause before conducting an inspection under the ordinance. The court of appeals affirmed the dismissal of the declaratory judgment claims, concluding that appellants lack standing to challenge the constitutionality of the rental inspection process. *McCaughtry v. City of Red Wing,* No. A10–0332, 2010 WL 3744638, at *3–4 (Minn.App. Sept. 28, 2010). The court of appeals held that appellants have not demonstrated any other imminent injury. *Id.* at *3. The court of appeals did not address the merits of appellants' challenge to the RDLC. We granted review to consider the justiciability requirements for declaratory judgment actions.

### I.

At issue here is the justiciability of appellants' declaratory judgment claims. A justiciable controversy exists if the claim "(1) involves definite and concrete assertions of right that emanate from a legal source, (2) involves a genuine conflict in tangible interests between parties with adverse interests, and (3) is capable of specific resolution by judgment rather than presenting hypothetical facts that would form an advisory opinion." *Onvoy, Inc. v. AL-*

*LETE, Inc.,* 736 N.W.2d 611, 617–18 (Minn.2007). "We do not issue advisory opinions, nor do we decide cases merely to establish precedent." *Jasper v. Comm'r of Pub. Safety,* 642 N.W.2d 435, 439 (Minn. 2002). Justiciability is an issue of law that we review de novo. *See In re Custody of D.T.R.,* 796 N.W.2d 509, 512 (Minn.2011) (reviewing jurisdictional issues de novo).

■ This appeal involves the justiciability of appellants' declaratory judgment claims challenging the constitutionality of the Red Wing rental inspection ordinance with respect to administrative warrants. Minnesota adopted the Uniform Declaratory Judgments Act in 1933. Uniform Declaratory Judgments Act, ch. 286, 1933 Minn. Laws 372 (codified as amended at Minn.Stat. §§ 555.01–.16 (2010)). Under the Declaratory Judgments Act, courts have the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Minn.Stat. § 555.01. The Declaratory Judgments Act "is remedial, intended to settle and to afford relief from uncertainty with respect to rights, status, and other legal relations." *Holiday Acres No. 3 v. Midwest Fed. Savs. & Loan Ass'n of Minneapolis,* 271 N.W.2d 445, 447 n. 2 (Minn. 1978); *see also* Minn.Stat. § 555.12 (stating that the Act "is to be liberally construed and administered").

■ The Declaratory Judgments Act specifically provides for challenges to the validity of a municipal ordinance that "affect[s]" the rights of a person. The Act provides:

Any person ... whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the ... statute, ordinance, contract, or franchise and obtain a decla-

ration of rights, status, or other legal relations thereunder.

Minn.Stat. § 555.02. Accordingly, we have long held that a declaratory judgment action is proper to test the validity of a municipal ordinance, regardless of whether another remedy exists. *Barron v. City of Minneapolis,* 212 Minn. 566, 569–70, 4 N.W.2d 622, 624 (1942); *see, e.g., Kopping-er v. City of Fairmont,* 311 Minn. 186, 200–01, 248 N.W.2d 708, 716 (1976) (holding municipal nudity ordinance unconstitutional on its face because of substantial overbreadth); *Constr. & Gen. Laborers Union Local 563, AFL–CIO v. City of St. Paul,* 270 Minn. 427, 435, 134 N.W.2d 26, 32 (1965) (concluding that municipal ordinance compelling all contractors performing work for St. Paul to employ only Ramsey County residents was unconstitutional and void).

■ Nonetheless, like every other action, a declaratory judgment action must present an actual, justiciable controversy. *Seiz v. Citizens Pure Ice Co.,* 207 Minn. 277, 281, 290 N.W. 802, 804 (1940). To establish a justiciable controversy in a declaratory judgment action challenging the constitutionality of a law, a plaintiff must show " 'a direct and imminent injury which results from the alleged unconstitutional provision.' " *Kennedy v. Carlson,* 544 N.W.2d 1, 6 (Minn.1996) (quoting *State v. Colsch,* 284 N.W.2d 839, 841 (Minn.1979)). As we explained in *State ex rel. Smith v. Haveland:*

Among the essentials necessary to the raising of a justiciable controversy is the existence of a genuine conflict in the tangible interests of the opposing litigants. Complainant must prove his possession of a legal interest or right which is capable of and in need of protection from the claims, demands, or objections emanating from a source competent legally to place such legal interest or right

in jeopardy. Although complainant need not necessarily possess a cause of action (as that term is ordinarily used) as a basis for obtaining declaratory relief, nevertheless he must, as a minimum requirement, possess a bona fide legal interest which has been, or with respect to the ripening seeds of a controversy is about to be, affected in a prejudicial manner.

223 Minn. 89, 92, 25 N.W.2d 474, 477 (1946), *quoted in Kennedy,* 544 N.W.2d at 6. An injury that is merely possible or hypothetical "is not enough" to establish justiciability. *Kennedy,* 544 N.W.2d at 6. Further, the Supreme Court has held that an issue is not fit for review when "further factual development would 'significantly advance [the court's] ability to deal with the legal issues presented.'" *Nat'l Park Hospitality Ass'n v. Dep't of the Interior,* 538 U.S. 803, 812, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (quoting *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.,* 438 U.S. 59, 82, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978)).

▮▮▮ In this case, the court of appeals affirmed the district court's dismissal of appellants' claims due to lack of standing, and appellants have asked us to clarify the standing requirements applicable to declaratory judgment actions. "Standing is a legal requirement that a party have a sufficient stake in a justiciable controversy to seek relief from a court." *Lorix v. Crompton Corp.,* 736 N.W.2d 619, 624 (Minn.2007) (citing *Sierra Club v. Morton,* 405 U.S. 727, 731–32, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)). In this case, there is no dispute that appellants are landlords and tenants subject to the Red Wing RDLC and that the City has sought administrative warrants since 2006 to inspect their properties. Consequently, appellants have "legally cognizable interests" that are "distinguished from the general public."

*St. Paul Area Chamber of Commerce v. Marzitelli,* 258 N.W.2d 585, 588 (Minn. 1977); *see Pennell v. City of San Jose,* 485 U.S. 1, 7–8, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988) (concluding that landlords had standing to challenge hardship provision of rent control ordinance even though hardship provision had not yet been enforced against them where landlords alleged that their properties were "subject to the terms of" the ordinance and they had many hardship tenants (citation omitted) (internal quotation marks omitted)).

The district court concluded, however, that "the mere presence" of an application for an administrative warrant does not create "an imminent injury." The court suggested that because a judicial officer must first approve an administrative warrant and the judicial officer may condition or limit the scope of the warrant, appellants' challenge to the constitutionality of the RDLC would not be appropriate until after the court has granted an application for an administrative warrant. Because the justiciability issue in this case focuses on *when* the landlords and tenants may challenge the RDLC—not *who* may bring the challenge—we believe that the relevant issue here is ripeness, not standing. *See McKee v. Likins,* 261 N.W.2d 566, 569–70 n. 1 (Minn.1977) (explaining that standing "is concerned with 'who' may bring a suit," whereas the Declaratory Judgments Act "is directed towards the 'ripeness' of a dispute, i.e., 'when' it may be brought").

▮▮▮ Therefore, we proceed to examine whether appellants' constitutional claims are ripe. A party challenging the constitutionality of a law must show that the law "is, or is about to be, applied to his disadvantage." *Lee v. Delmont,* 228 Minn. 101, 110–11, 36 N.W.2d 530, 537 (1949); *see also Haveland,* 223 Minn. at 94, 25 N.W.2d at 478 (explaining that litigants must be able to show that they have sus-

tained or are immediately in danger of sustaining some direct injury). "Issues which have no existence other than in the realm of future possibility are purely hypothetical and are not justiciable." *Lee,* 228 Minn. at 110, 36 N.W.2d at 537. At the same time, we have recognized the "preventative" purpose of declaratory judgment actions. *Petition for Improvement of Cnty. Ditch No. 86 v. Phillips,* 625 N.W.2d 813, 821 (Minn.2001). Declaratory judgment actions allow parties "to be relieved of an uncertainty and insecurity arising out of an actual controversy" with respect to their legal rights before those rights actually have been invaded:

> Jurisdiction exists to declare the rights, status, and other legal relations of the parties if the complainant is possessed of a judicially protectible right or status which is placed in jeopardy by the ripe or ripening seeds of an actual controversy with an adversary party, and such jurisdiction exists although the *status quo* between the parties has not yet been destroyed or impaired and even though no relief is or can be claimed or afforded beyond that of merely declaring the complainant's rights so as to relieve him from a present uncertainty and insecurity.

*Minneapolis Fed'n of Men Teachers, Local 238, AFL v. Bd. of Educ. of Minneapolis,* 238 Minn. 154, 157, 56 N.W.2d 203, 205–06 (1952) (footnote omitted).

We conclude that appellants' challenge to the constitutionality of the administrative warrant provisions in the RDLC presents a justiciable controversy. Appellants have opposed three separate applications for administrative warrants to inspect their properties. Appellants contend that they "want to know if the City's underlying inspection ordinance is constitutional before City officials apply for another warrant, show up at their door with a warrant, or search their homes." According to appellants, the Minnesota Constitution forbids housing inspections without some evidence to believe that a code violation exists—that is, an administrative warrant application requires individualized probable cause. In addition, appellants argue that the City's inspection program "runs afoul of the Minnesota Constitution's yet-to-be developed administrative-warrant doctrine because it authorizes searches of occupied buildings." [3]

We note that appellants are presenting a facial challenge to the constitutionality of the ordinance.[4] The appellants' constitutional challenge does not depend on the contents of any administrative warrant application because a facial challenge asserts that a law "*always* operates unconstitutionally." *Black's Law Dictionary* 261 (9th ed.2009) (emphasis added). Therefore, because this case presents a purely legal question that does not require the development of a factual record, there is

**3.** Before the district court, appellants also raised claims under the United States Constitution, but the issue before us is the justiciability of appellants' claim that the Minnesota Constitution provides greater protection from unreasonable searches than the United States Constitution.

**4.** Before the district court appellants also made as-applied challenges to the ordinance. After the district court denied the City's application for an administrative warrant, the court declined to consider "the facial/as-ap-

plied distinction." The court explained that it expected the City would amend the ordinance after the district court's decision to deny the application for the administrative warrant; therefore, any analysis of "the facial/as-applied distinction would become outdated as the ordinance will have very likely changed." The City's amendment of the ordinance, however, will not have any bearing on appellants' facial constitutional challenge—that the Minnesota Constitution prohibits the use of administrative warrants to search homes.

no reason to delay resolution of the constitutional questions. *See, e.g., Harris v. Mexican Specialty Foods, Inc.,* 564 F.3d 1301, 1308 (11th Cir.2009) (stating that "a purely legal claim is presumptively ripe for judicial review because it does not require a developed factual record"). The Eighth Circuit Court of Appeals has explained that "[p]laintiffs have standing to challenge the facial validity of a regulation notwithstanding the pre-enforcement nature of a lawsuit, where the impact of the regulation is direct and immediate and they allege an actual, well-founded fear that the law will be enforced against them." *Gray v. City of Valley Park,* 567 F.3d 976, 984 (8th Cir.2009).

The constitutional issue that the landlords and tenants have raised is neither hypothetical nor abstract. The City has actually begun enforcing the rental inspection ordinance against appellants. The City has sought not just one but three separate administrative warrants over a four-year period to inspect their properties, which appellants have been forced to defend. And the City has indicated that it will continue to seek administrative warrants to inspect appellants' properties. Accordingly, the claims here are based on an actual controversy, and appellants are seeking specific declaratory relief—a judgment on the constitutionality of the administrative warrant provisions in the RDLC.

The City argues that the constitutional claims are not justiciable at this time because the landlords and tenants have successfully challenged the previous administrative warrant applications. Although the district court denied each of the City's warrant applications on other grounds, the landlords and tenants are not required to continue expending resources to oppose serial warrant applications. The legal interest at stake here is the right to be free from allegedly unconstitutional searches. In this situation, the landlords and tenants do not have to wait until such a search is ordered or carried out to establish ripeness. The Declaratory Judgments Act is designed to resolve the uncertainty over a party's legal rights pertaining to an actual controversy *before* those rights have been violated. *Culligan Soft Water Serv. of Inglewood, Inc. v. Culligan Int'l Co.,* 288 N.W.2d 213, 215–16 (Minn.1979). A disruption of the status quo is not "a prerequisite to the establishment of a justiciable controversy." *Minneapolis Fed'n of Men Teachers,* 238 Minn. at 158, 56 N.W.2d at 206. Further, we have explained that "[i]t is no defense" that a court has acted to prevent "the ripening seeds of a controversy from becoming ripe." *Id.* at 158, 56 N.W.2d at 206.[5]

We also reject the City's argument that appellants may not challenge the constitutionality of the ordinance outside a warrant-application proceeding. "The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Minn. R. Civ. P. 57; *see Minn. Chippewa Tribe v. Dep't of Labor & Indus.,* 339 N.W.2d 55, 56 (Minn.1983) (concluding that declaratory judgment action to resolve applicability of workers' compensation laws to Minnesota Chippewa Tribe was ripe notwithstanding "the existence of pending workers' compensation claims against two of the six bands comprising the Tribe"); *Barron,* 212 Minn. at 569–70, 4 N.W.2d at 624 (conclud-

---

5. Although the issue is not before us, appellants also claim that there is no clear right to appeal from a district court order granting an application for an administrative warrant. *Cf. N.D. State Elec. Bd. v. Boren,* 756 N.W.2d 784, 788–89 (N.D.2008) (holding that district court order issuing administrative warrant and compelling an electrical inspection of home was interlocutory and not a final appealable order).

ing that plaintiff did not have to wait for prosecution to determine validity of municipal ordinance imposing annual licensing fee on vending machines).

In arguing that appellants' claims here are not justiciable, the City also relies on the fact that "a judge always stands between the City and its ability to conduct any inspection of Plaintiffs' properties." However, there is no probable cause or other standard set out in the ordinance, and the City essentially is arguing that appellants must wait and hope that a judge will "write in" the correct constitutional limitations on the warrant power. The possibility that a judge might in the future limit the City's administrative warrant application to ensure that the warrant comports with the Minnesota Constitution does not make the challenge here premature. *Cf. Blanchette v. Conn. Gen. Ins. Corps.,* 419 U.S. 102, 142, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974) (explaining that "the possibility that a court may later decline to enforce [a law] as written because of its unconstitutionality cannot constitute a contingency itself pretermitting earlier consideration of the constitutionality" of the law). Moreover, the district court has acknowledged that the appropriate standard under the Minnesota Constitution is not clear. In fact, the appropriate constitutional standard is the precise legal issue the landlords and tenants are seeking to resolve in this declaratory judgment action. Further, appellants' constitutional challenge goes beyond individual warrant applications; they are making a broader challenge to the constitutionality of the entire administrative warrant scheme based on the lack of a requirement for individualized probable cause to conduct housing inspections.

Accordingly, we conclude that the landlords and tenants here have presented a justiciable controversy. We reverse the court of appeals' decision affirming summary judgment on the declaratory judgment claims based on lack of standing. Because the issue raised in this court is one of justiciability, "we need not reach the merits of the underlying controversy at this time." *Holiday Acres No. 3,* 271 N.W.2d at 447. Therefore, we remand to the court of appeals to consider the merits of appellants' challenge to the Red Wing rental inspection ordinance under the Minnesota Constitution.

Reversed and remanded.

STRAS, J. took no part in the consideration or decision of this case.