*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0134**

Beverly Waldorf Tokarz,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed August 29, 2016
Affirmed
Schellhas, Judge**

Stearns County District Court
File No. 73-CV-15-5632

Beverly Waldorf Tokarz, Minnetonka, Minnesota (pro se appellant)

Lori Swanson, Attorney General, Jacob Campion, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Reyes, Judge; and Kalitowski, Judge.[*]

## UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges the district court's dismissal of her declaratory-judgment action. We affirm.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**FACTS**

On June 19, 2015, appellant Beverly Waldorf Tokarz brought a pro se declaratory-judgment action against respondent State of Minnesota; Tokarz also named "BEVERLY MARY WALDORF -- STATE FILE # 1964-MN-037868" (the purported organization) as a defendant in the action.[1] Tokarz served process on the state and attempted to serve process on the purported organization by delivering the summons and complaint to the Office of the Minnesota Attorney General.[2] Although the complaint is difficult to comprehend, it appears to allege that Tokarz's birth certificate is a legal instrument that evidences the creation of the purported organization and that the state or the purported organization or both "are using [Tokarz]'s property in commercial and legal transactions without [her] knowledge or consent." The complaint seeks "a declaration and decree concerning," among other things, "[t]he purpose and intent of said Instrument," "[t]he construction and validity of said Instrument," "[t]he type of organization organized," and "[t]he nature and purpose

---

[1] According to Tokarz, "BEVERLY MARY WALDORF -- STATE FILE # 1964-MN-037868" is "a Minnesota registered organization" to which Tokarz has some undefined "relationship" and in whose "estate" Tokarz "claims an estate." We refer to "BEVERLY MARY WALDORF -- STATE FILE # 1964-MN-037868" as "the purported organization."

[2] Tokarz's attempt to serve process on the purported organization was legally ineffective. *See* Minn. Stat. § 5.25, subd. 1 (2014) (providing that process may be served on certain entities, including business organizations, by serving process on "the *secretary of state*" if "no agent, officer, manager, or general partner [of the entity] can be found *at the address on file with the secretary of state*" (emphasis added)). Accordingly, we reject without analysis Tokarz's argument that she is entitled to a default judgment against the purported organization, of which the secretary of state has no record, because the purported organization was never made a party to Tokarz's declaratory-judgment action. *See In re Skyline Materials, Ltd.*, 835 N.W.2d 472, 475 (Minn. 2013) (stating that "one is not made a 'party' to an action" until effective service of process occurs (quotation omitted)).

of the organization organized." Attached to the complaint are an affidavit from Tokarz's mother regarding the circumstances surrounding Tokarz's birth and a copy of Tokarz's Minnesota birth certificate.

The state moved to dismiss Tokarz's declaratory-judgment action on July 9, 2015, arguing in part that the action raises no justiciable controversy. In response, Tokarz filed various documents, including a memorandum in opposition to the state's dismissal motion, a motion for summary judgment, and supportive "evidence" consisting of papers typical of the sovereign-citizen movement;[3] copies of Tokarz's Minnesota birth register, marriage certificate, and driver's license; a partial transcript of a video recording of "Bankruptcy and Revised Article 9," which seems to be a legal-education program; and a copy of the Uniform Declaratory Judgments Act. Tokarz subsequently filed hundreds of pages of additional "evidence" consisting of a text on the law of belligerent occupation and a 1934 book by Franklin D. Roosevelt. The district court conducted a hearing, granted the state's dismissal motion, implicitly denied Tokarz's summary-judgment motion as moot, and dismissed Tokarz's declaratory-judgment action.

This appeal follows.

## D E C I S I O N

Under Minnesota's Uniform Declaratory Judgments Act (UDJA), Minn. Stat. §§ 555.01–.16 (2014), district courts "have power to declare rights, status, and other legal

---

[3] *See generally* Joshua P. Weir, Note and Comment, *Sovereign Citizens: A Reasoned Response to the Madness*, 19 Lewis & Clark L. Rev. 829, 834–38 (2015) (describing origins and modern belief systems of sovereign-citizen movement).

relations whether or not further relief is or could be claimed." Minn. Stat. § 555.01. "But the UDJA cannot create a cause of action that does not otherwise exist." *Hoeft v. Hennepin Cty.*, 754 N.W.2d 717, 722 (Minn. App. 2008) (quotation omitted), *review denied* (Minn. Nov. 18, 2008). "[L]ike every other action, a declaratory judgment action must present an actual, justiciable controversy." *McCaughtry v. City of Red Wing*, 808 N.W.2d 331, 337 (Minn. 2011). A declaratory-judgment action presents a justiciable controversy only if the action "(1) involves definite and concrete assertions of right that emanate from a legal source, (2) involves a genuine conflict in tangible interests between parties with adverse interests, and (3) is capable of specific resolution by judgment rather than presenting hypothetical facts that would form an advisory opinion." *Id.* at 336 (quotation omitted). "Justiciability is an issue of law that [appellate courts] review de novo." *Id.* at 337.

In this case, the district court concluded that Tokarz's declaratory-judgment action does not present a justiciable controversy because the action involves neither an assertion of right that emanates from a legal source nor a genuine conflict between the parties. The court also suggested that the action is not capable of specific resolution by judgment. Our de novo application of the three-pronged test for a justiciable controversy reveals no error in this conclusion.

First, Tokarz's declaratory-judgment action involves no "definite and concrete assertions of right that emanate from a legal source." *Id.* at 336 (quotation omitted). Under the UDJA,

> [a]ny person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal

4

> ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Minn. Stat. § 555.02. But whatever Tokarz believes, her birth certificate simply is not an "instrument" that may be construed, validated, or invalidated under the UDJA. *See Rivera v. United States*, 105 Fed. Cl. 644, 649 (2012) (stating that "neither birth certificates nor social security numbers recognize or impose contractual rights, obligations, or duties" (quotation omitted)). Tokarz makes no other discernible assertion of right that emanates from a legal source.

Second, Tokarz's declaratory-judgment action involves no "genuine conflict in tangible interests between parties with adverse interests." *McCaughtry*, 808 N.W.2d at 336 (quotation omitted). The state registrar—that is, the commissioner of health or the commissioner's designee—must "maintain a statewide system of vital records," including "record[s] or report[s] of birth[s]." Minn. Stat. §§ 144.212, subds. 6, 8 (2014), .213, subd. 2(a) (Supp. 2015). Physical access to a birth record is subject to the supervision and regulation of the registrar. Minn. Stat. § 144.225, subd. 1 (2014). The registrar is required to issue a certified birth record to a person who is the subject of that record. *Id.*, subd. 7 (2014). And a birth record may be amended, corrected, or replaced by the registrar alone. Minn. Stat. §§ 144.212, subd. 8, .215, .218, .2181(a) (2014). Accordingly, it appears that the registrar, not the state, is the proper party here. *Cf. Meriwether Minn. Land & Timber, LLC v. State*, 818 N.W.2d 557, 562–63, 573 (Minn. App. 2012) (questioning whether state was proper party to action against "various State of Minnesota officials and entities,"

including commissioner of revenue, and noting that "the state can provide no relief other than that provided by the commissioner of revenue"). Moreover, Tokarz's general objection to the state's method of recording her birth does not constitute a genuine conflict of the type required for justiciability. *See Hoeft*, 754 N.W.2d at 723 ("Appellant[s'] disapproval of respondents' conduct, without more, does not create a genuine conflict in tangible interests."). Even if the state is a proper party to the action, then, Tokarz fails to allege an interest in her birth record that is *adverse* to the state's interest in maintaining vital records.

Third, Tokarz's declaratory-judgment action is not "capable of specific resolution by judgment rather than presenting hypothetical facts that would form an advisory opinion." *McCaughtry*, 808 N.W.2d at 336 (quotation omitted). By law, the state registrar controls Tokarz's birth record. *See* Minn. Stat. §§ 144.212, subds. 6, 8, .213, subd. 2(a), .215, .218, .2181(a), .225, subds. 1, 7. Yet Tokarz does not allege that the registrar has denied Tokarz physical access to—or has declined to amend, correct, or replace—her birth record. Indeed, Tokarz does not allege that she ever has acted in accordance with the applicable statutes and rules in an attempt to secure physical access to—or amendment, correction, or replacement of—her birth record. Thus, a declaration by the district court as to the lawfulness of the registrar's *future* actions, if any, with regard to Tokarz's birth record, or as to the legal effect of *hypothetical* contents of her birth record, would be no more than an advisory opinion.

In sum, none of the three requirements of justiciability is present here. Because Tokarz's declaratory-judgment action does not present a justiciable controversy, we

6

conclude that the district court properly dismissed the action. *See Hoeft*, 754 N.W.2d at 728–29 (concluding that district court "properly dismissed appellants' action" for declaratory judgment where action "d[id] not present a justiciable controversy").

**Affirmed.**