STATE OF MINNESOTA

IN SUPREME COURT

A23-0360

| | |
|---|---|
| Court of Appeals | Procaccini, J. |
| | Took no part, Gaïtas, J. |
| Deborah Jane Clapp, | |
| Respondent, | |
| vs. | Filed: January 8, 2025 |
| | Office of Appellate Courts |
| Dr. Lisa Sayles-Adams, in her official capacity as Superintendent of Minneapolis Public Schools, et al., | |
| Appellants. | |

_____

Daniel N. Rosen, Rosen LLC, Minneapolis, Minnesota; and

Michael Bekesha, Judicial Watch, Inc., Washington, D.C., for respondent.

Timothy A. Sullivan, Margaret A. Skelton, Ratwik, Roszak & Maloney, P.A., Saint Paul, Minnesota, for appellants.

Debra M. Corhouse, Education Minnesota, Saint Paul, Minnesota; and

Roger J. Aronson, Law Office of Roger J. Aronson, Minneapolis, Minnesota, for amicus curiae Education Minnesota, Minneapolis Federation of Teachers, Minnesota Elementary School Principals' Association, and Minnesota Association of Secondary School Principals.

Mark J. Schneider, Law Enforcement Labor Services, Inc., Brooklyn Center, Minnesota, for amicus curiae Minnesota Police and Peace Officers Association, Law Enforcement Labor Services, Inc., Hennepin County Sheriff's Deputies Association, and Ramsey County Deputy Sheriff's Federation.

1

Benjamin J. Reber, Minnesota Public Employer Labor Relations Association, Minneapolis, Minnesota; and

Gregory J. Wiley, Wiley Reber Law, PC, Edina, Minnesota, for amicus curiae Minnesota Public Employer Labor Relations Association.

Brian W. Varland, Heley, Duncan & Melander, PLLP, Minneapolis, Minnesota, for amicus curiae Minnesota School Boards Association.

Kevin M. Beck, Kristina J. Borgen, Kelly & Lemmons, P.A., Saint Paul, Minnesota, for amicus curiae Teamsters Local 320 and Saint Paul Police Federation.

_____

## S Y L L A B U S

Taxpayer standing exists only when the central dispute involves alleged unlawful disbursements of public funds, and because the disbursements alleged by the respondent are merely incidental to the central dispute in this case, the respondent lacks taxpayer standing.

Reversed.

## O P I N I O N

PROCACCINI, Justice.

This case gives us an opportunity to apply the requirements for taxpayer standing to challenge governmental action—a standard that we recently clarified in *Minnesota Voters Alliance v. Hunt*, 10 N.W.3d 163 (Minn. 2024). Respondent Deborah Jane Clapp, a Minneapolis homeowner who pays annual property taxes, brought a declaratory judgment action against appellants Rochelle Cox, in her official capacity as Interim Superintendent

2

of Minneapolis Public Schools;[1] Minneapolis Public Schools, Special School District No. 1; and the Minneapolis Board of Education (collectively, the School District). In her complaint, Clapp challenged the constitutionality of "racial and ethnic preference provisions" in a collective bargaining agreement between Minneapolis Public Schools and its teachers' union.

The School District moved to dismiss Clapp's complaint for lack of standing and ripeness. The district court agreed that Clapp lacks standing and that her claims are not ripe, and it dismissed the complaint. Clapp appealed. In an opinion issued before we issued our decision in *Hunt*, the court of appeals reversed the district court's rulings on standing and ripeness. The School District petitioned for review of those issues. We granted review and requested supplemental briefing on the additional issue of mootness.

We resolve this case based on standing. Guided by our recent clarification of the requirements for taxpayer standing in *Hunt*, we conclude that the central dispute in this case does not involve unlawful disbursement of public funds. For that reason, Clapp lacks taxpayer standing, and we reverse the court of appeals.

## FACTS

As noted above, Clapp owns a home in Minneapolis and pays annual property taxes. She sued the School District, seeking declaratory and injunctive relief. Clapp seeks to stop the School District "from implementing and spending public money on the implementing

---

[1] Rochelle Cox is no longer the Interim Superintendent of Minneapolis Public Schools. On January 7, 2025, we ordered that the current Superintendent of Minneapolis Public Schools, Dr. Lisa Sayles-Adams, be substituted for Rochelle Cox in this matter. *See* Minn. R. Civ. App. P. 143.04.

3

provisions" of the 2021–2023 Teacher Contract "between Minneapolis Public Schools and the Minneapolis Federation of Teachers Local 59" (the Contract).[2] The Contract is a collective bargaining agreement the School District reached with the teachers' union following a three-week strike in 2022.

Clapp specifically challenges Article 15 of the Contract, which she alleges "provides preferences, protections, and privileges for certain public school teachers on the basis of race and ethnicity."[3] The complaint alleges that, before the adoption of Article 15, teachers were laid off, reassigned, and reinstated in order of seniority, "without regard to race or ethnicity," but now "teachers of color are exempt from [the School District's] seniority-based layoffs and reassignments." The complaint further alleges that the School District is engaging in acts that violate the Minnesota Constitution by implementing Article 15 and "laying off, reassigning, reinstating, and retaining teachers on the basis of their race and ethnicity."

---

[2] Because this appeal arises from a motion to dismiss by the School District, we look only to the facts alleged in the complaint and accept those facts as true. *See Stone v. Invitation Homes, Inc.*, 4 N.W.3d 489, 491 (Minn. 2024). We note, however, that the School District attached a copy of the Contract to its motion to dismiss to the district court. *See Rilley v. MoneyMutual, LLC*, 884 N.W.2d 321, 325 n.4 (Minn. 2016) (stating that a motion to dismiss is not converted into a motion for summary judgment where the motion seeks dismissal due to lack of jurisdiction); *N. States Power Co. v. Minn. Metro. Council*, 684 N.W.2d 485, 490 (Minn. 2004) (noting that courts "may consider documents referenced in a complaint without converting the motion to dismiss to one for summary judgment" (emphasis omitted)). The language found in the Contract varies from some of the language alleged in the complaint. Nevertheless, and because it does not change our analysis, we consider the language as stated by Clapp.

[3] On May 14, 2024, the parties reached a new agreement, which continues to include Article 15.

4

Clapp's complaint asserts that Article 15 of the Contract "violates Minnesota's Equal Protection Guarantee." *See* Minn. Const. art. I, § 2 (providing that "[n]o member of this state shall be disenfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers"). Based on this assertion, Clapp asks the district court to declare as illegal any actions to effectuate Article 15 and to enjoin the School District from spending public money to implement that provision.[4] And she contends that the courts have jurisdiction to entertain her lawsuit and provide her requested relief under "Minnesota's common law taxpayer standing doctrine."

The School District moved to dismiss Clapp's complaint, arguing that Clapp lacks standing to challenge the Contract and, alternatively, that her claims are not ripe.[5] After a hearing, the district court determined that the complaint failed to sufficiently allege taxpayer standing and that Clapp's claims are not ripe. The district court therefore dismissed the complaint without prejudice. Clapp appealed, and the court of appeals reversed the district court on both issues—concluding that Clapp's complaint "pleaded an adequate basis for taxpayer standing, and the claims are ripe." *Clapp v. Cox*, A23-0360, 2023 WL 8359923, at *1 (Minn. App. Dec. 4, 2023).

---

[4]   Clapp's complaint originally asserted two claims. At oral argument, and in light of our recent decision in *Hunt*, Clapp's counsel clarified that the second claim is no longer at issue. For this reason, our analysis concerns only the first claim asserted in Clapp's complaint—seeking declaratory and injunctive relief to stop the School District from spending public money to implement Article 15 of the Contract.

[5]   The School District also argued in its motion to dismiss that the complaint fails to state a claim on which relief may be granted. Neither the district court nor the court of appeals reached this argument, and it is not before us here.

5

The School District appeals. We granted review on both issues addressed by the court of appeals—taxpayer standing and ripeness. We also ordered supplemental briefing from the parties on the issue of mootness.

## ANALYSIS

This appeal concerns the justiciability of Clapp's claims for declaratory and injunctive relief against the School District. In other words, we need to decide whether Clapp's claims are appropriate for judicial resolution. *See Justiciability*, *Black's Law Dictionary* (12th ed. 2024) (defining justiciability as "[t]he quality, state, or condition of being appropriate or suitable for adjudication by a court"). Justiciability is separate and distinct from the merits of the case. *Cruz-Guzman v. State*, 916 N.W.2d 1, 7 (Minn. 2018). Absent a justiciable controversy, courts lack jurisdiction to declare governmental action unconstitutional, by declaratory judgment or otherwise, even if the question involved is one of interest to taxpayers in general. *State ex rel. Smith v. Haveland*, 25 N.W.2d 474, 478 (Minn. 1946); *see also In re Sandy Pappas Senate Comm.*, 488 N.W.2d 795, 798 (Minn. 1992) (considering taxpayer standing to challenge governmental action). Justiciability is an issue of law that we review de novo. *Snell v. Walz*, 985 N.W.2d 277, 283 (Minn. 2023).

The School District challenges the court of appeals's conclusions that Clapp has standing to bring her claims and that her claims are ripe. And the parties agree that this case is now "technically" moot because the 2021–2023 Teacher Contract is no longer in effect, but Clapp argues that exceptions to the mootness doctrine apply here and should allow this case to continue. All three issues on appeal—standing, ripeness, and

6

mootness—go to the question of justiciability. *State ex rel. Ford v. Schnell*, 933 N.W.2d 393, 402 (Minn. 2019) (stating that "mootness and ripeness are relevant to the question of justiciability"); *McCaughtry v. City of Red Wing*, 808 N.W.2d 331, 338 (Minn. 2011) (stating that ripeness and standing are justiciability issues). But we can start and end our analysis with the threshold issue of standing. *Garza v. State*, 632 N.W.2d 633, 637 (Minn. 2001) (stating that "standing is a threshold issue").

Standing is an essential element of jurisdiction—"a legal requirement that a party have a sufficient stake in a justiciable controversy to seek relief from a court." *McCaughtry*, 808 N.W.2d at 338. To have standing, a party generally needs to have "suffered some injury in fact" or be "the beneficiary of some legislative enactment granting standing." *State ex rel. Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 493 (Minn. 1996) (citation omitted) (internal quotation marks omitted).

Here, Clapp relies on an exception to the general rule—the common law doctrine of taxpayer standing. Under that doctrine, "[t]axpayers *without* a direct or personal injury may still have standing to bring an action to restrain the unlawful use of public funds." *Hunt*, 10 N.W.3d at 167 (emphasis added). Generally, in the context of taxpayer standing, the use of public funds is lawful if the funds are spent for a "public [purpose] for which tax money may be used, and there is authority to make the expenditure, and the use is genuine as distinguished from a subterfuge or something farcical." *Borgelt v. City of Minneapolis*, 135 N.W.2d 438, 441 (Minn. 1965). We recently clarified that a taxpayer *does not* have standing when they seek only to generally restrain allegedly illegal actions on the part of public officials. *Hunt*, 10 N.W.3d at 169. Rather, taxpayer standing exists "only when the

central dispute involves alleged unlawful disbursements of public funds." *Id.* The requirement that the alleged unlawful disbursements be the "central dispute" means that a taxpayer may not "manufacture standing" by relying on expenditures that are merely "incidental" to the central dispute. *Id.* at 169–70.

Applying our law of taxpayer standing shows that Clapp has not sufficiently alleged that an unlawful disbursement of public funds is the central dispute in this case. Clapp alleges that she lives and owns a home in Minneapolis and pays property taxes on that home; local property taxes fund "approximately 31 percent" of the School District's costs; "expenses associated with the process of laying off, reassigning, reinstating, and retaining teachers" make up a portion of the School District's costs; the School District and the Minneapolis Federation of Teachers Local 59 entered into an agreement—the Contract; Article 15 of the Contract violates the Equal Protection Clause of the Minnesota Constitution, Minn. Const. art. I, § 2; and therefore "[a]ll public money used to implement Article 15" and "all public money used in furtherance of and to ensure compliance with Article 15" are illegal.

Even if all the allegations in her complaint were true,[6] Clapp's challenge would encompass only the incidental use of public funds to implement and monitor compliance with Article 15 of the Contract, a provision that she alleges to be illegal. Clapp's arguments

---

[6]     We rely on the facts stated in Clapp's complaint and accept them as true, but we give no deference to her legal conclusions. "[W]e are not bound by legal conclusions stated in a complaint when determining whether the complaint survives a motion to dismiss." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014) (citation omitted) (internal quotation marks omitted).

8

in support of her standing as a taxpayer in this case are like those rejected in *Hunt*. 10 N.W.3d at 164–65. The plaintiffs in *Hunt* challenged the Legislature's passage of the Re-Enfranchisement Act—an act that "focuses on restoring certain individuals' right to vote and does not contemplate government expenditures." *Id.* at 169. The *Hunt* plaintiffs sought to invoke taxpayer standing based on the Legislature's appropriation of public funds to implement the Re-Enfranchisement Act and alleged that, because the new voting provision violated Minnesota Constitution, Article VII, Section 1, it was unlawful to use public funds to notify and educate people about the new voting provision. *Hunt*, 10 N.W.3d at 165. We rejected that argument and concluded that the plaintiffs lacked taxpayer standing because the alleged unlawful expenditures of public funds were merely incidental to the act at the center of the lawsuit. *Id.* at 169–70.

Our observations in *Hunt* are no less true here. At bottom, Clapp attempts to challenge a substantive governmental act that may require the incidental use of funds—the use of public funds "to implement Article 15." But "the activities of governmental agencies engaged in public service ought not to be hindered merely because a citizen does not agree with the policy or discretion of those charged with the responsibility of executing the law." *Hunt*, 10 N.W.3d at 168 (citation omitted). Taxpayer standing would become "meaningless" if we were to allow "parties to challenge substantive government acts that involve incidental expenditures" because practically every governmental act "entails at least *some* public expenditure." *Id.* at 169.

And this case is readily distinguishable from those in which an unlawful disbursement *was* the central dispute. *See, e.g.*, *Arens v. Village of Rogers*, 61 N.W.2d

9

508, 513–514 (Minn. 1953) (challenge to the constitutionality of a statute providing for a disbursement); *Regan v. Babcock*, 247 N.W. 12, 16 (Minn. 1933) (challenge to a government contract entered without first seeking competitive bids in violation of statutory requirements). Clapp's complaint alleges only that there will be an expenditure of public funds used to implement and monitor compliance with Article 15. That expenditure is merely incidental to the substantive governmental action—alleged "preferences, protections, and privileges for certain public school teachers"—that Clapp seeks to challenge. Clapp does not have taxpayer standing because an unlawful disbursement of government funds is not the central dispute in this case.

To be clear, we do not suggest that the Contract is immune from judicial review,[7] nor do we express any opinion on the merits of Clapp's claims. We hold only that because Clapp lacks standing to assert her claims, those claims are not justiciable, and the district court properly granted the School District's motion to dismiss for that reason.[8]

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals.

Reversed.

GAÏTAS, J., took no part in the consideration or decision of this case.

---

[7] As counsel for the School District acknowledged at oral argument, there may well be other parties who would have standing to challenge the Contract, including Article 15.

[8] Because we resolve this case on standing grounds, we need not address ripeness or mootness.

10